Filed 11/19/24  P. v. Hunter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083529 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN424882) |
| MARK HUNTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Mark Hunter appeals from a judgment after he was convicted of forcible sex crimes and sentenced to 50 years to life plus 80 years under the

One Strike law (Pen. Code,[1] § 667.61) and the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12). He raises two issues on appeal relating to his sentencing: (1) he received ineffective assistance of counsel due to his counsel's failure to object to his removal from the courtroom for disruptive conduct during the sentencing hearing; and (2) the $300 restitution fine should be stayed because the trial court failed to recognize its discretion not to impose this fine as a matter of due process based on Hunter's inability to pay. We reject these contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We only briefly summarize the facts because many of the details are not relevant to the sentencing issues raised on appeal. In February 1999, Hunter approached 19-year-old Jane Doe at a payphone in Escondido and asked for directions to a motel. She agreed to help him. Hunter used a ruse to get her inside his van, then bound her wrists and ankles and covered her mouth with duct tape. As Hunter was restraining her, he told her, "Don't scream. Don't make me have to strangle you." He then drove the van to a remote location while she was lying on the floor in the back. After forcing Jane Doe to undress, Hunter told her, "What's going to happen is that I want you to suck my dick . . . and then you're going to give me some pussy." Hunter removed the duct tape from her mouth and put it over her eyes, forced her to orally copulate him, then raped and sodomized her. Hunter eventually drove Jane Doe back to her car and let her go. She reported the crime immediately, but the investigation went cold. Twenty years later, Hunter's DNA was matched to semen collected from Jane Doe's vagina during her sexual assault examination.

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

Testifying in his own defense, Hunter stated that he had suffered memory loss after being hit in the head with a baseball bat in 1998. Before meeting his current girlfriend in 2002 or 2003, he had multiple one-night stands, but he could not remember all of them. He had no memory of meeting Jane Doe. Hunter told the police that if his semen was found inside Jane Doe's vagina, he must have had sex with her. Hunter denied that he would have tied Jane Doe up, kidnapped her, or committed forcible sexual acts against her.

A jury convicted Hunter of two counts of forcible rape (§ 261, subd. (a)(2)), one count of forcible sodomy (§ 286, subd. (c)(2)), three counts of forcible oral copulation (§ 288a, subd. (c)(2)), and one count of kidnapping for rape, sodomy, or oral copulation (§ 209, subd. (b)(1)). The jury also found true One Strike circumstances of kidnapping (§ 667.61, subds. (a), (c), (d)) and tying or binding (§ 667.61, subds. (b), (c), (e)). The trial court found true a prior strike allegation (§§ 667, subds. (b)–(i) & 1170.12).

The probation report recommended a sentence of 50 years to life plus a determinate term of 80 years. It also recommended the following fines and fees: a restitution fine of $10,000 under Penal Code section 1202.4, subdivision (b); an additional restitution fine of $10,000 to be stayed unless Hunter's parole supervision was revoked under Penal Code section 1202.45; a court security fee of $320 under Penal Code section 1465.8; a criminal conviction assessment fee of $210 under Government Code section 70373; a sex offender registration fee of $300 under Penal Code section 290.3; and direct restitution to the victim in an amount to be determined under Penal Code section 1202.4, subdivision (f). According to the probation report, Hunter received $400 per month in social security benefits and $2,000 per month in disability from the Navy.

Before sentencing, defense counsel submitted a combined sentencing brief and motion to strike Hunter's strike prior under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. In relevant part, the defense asserted that Hunter had suffered juvenile trauma and mental health issues the court should consider at sentencing.

Attached to this pleading were multiple supporting exhibits, including a neuropsychological evaluation by Dr. Cynthia Boyd, a risk assessment by psychologist Clark R. Clipson, a letter from Hunter's girlfriend who had lived with him for over 20 years, and letters from Hunter's uncle and aunt. According to these exhibits, Hunter was emotionally and physically abused by his stepfather from a young age and was exposed to domestic violence between his mother and stepfather. When Hunter was only four years old, his stepfather burned his fingers on the stove. Later, his stepfather beat him with belts, sticks, whips, and a gun holster. Hunter's mother never intervened. As a result, Hunter started drinking at a young age and became dependent on alcohol. Hunter also reported a history of psychiatric treatment for posttraumatic stress, depression, and anger issues.

The defense exhibits included additional evidence that Hunter had been hit in the head with a metal bat in January 1999, the month before the charged crimes. According to the medical records, he sustained a large scalp laceration and skull fracture, resulting in moderate traumatic brain injury and post-concussive symptoms, including memory problems.

At sentencing, the court confirmed that it had read Hunter's sentencing brief and *Romero* motion and all attachments. With Hunter present in court, defense counsel then made her sentencing argument and asked the court to strike the strike prior and the One Strike allegations. Among other things, defense counsel argued that Hunter had "been the victim of substantial abuse

4

in his childhood, which has been corroborated by his aunt and uncle" and he had suffered "a traumatic brain injury near the time where this incident occurred" and "post-concussive symptoms ongoing after that incident occurred."

After defense counsel completed her sentencing argument, the prosecutor read a letter from the victim, then stated that the People would be seeking a sentence of 50 years to life plus a determinate term of 80 years. At that point, Hunter interjected and began yelling in the courtroom. He said: "My god. I didn't do this. You're a liar. . . . This woman has been . . . for a year and a half." The trial court repeatedly attempted to stop Hunter by saying: "Mr. Hunter. . . . Mr. Hunter. . . . Stop. Mr. Hunter, listen. Stop. Do you want to leave?" Hunter responded: "No, I don't want to, but I'm sick of her lies." The court warned: "Okay. You're going to leave if you can't be quiet. One more outburst." Hunter replied: "I can't help it. I'm innocent." The court responded: "Okay. You're leaving. Go ahead and take him out." Hunter continued: "Okay. Good. I am innocent of this crime. I didn't do this. She lied and changed the discovery. She changed everything. She's a freaking liar."

Hunter was removed from the courtroom for the rest of the hearing. Defense counsel did not object to his removal. The court later explained: "For the record here today, he was yelling. He was yelling over the Court for a while. He was personally attacking the prosecutor. Even after me warning him, he continued to go forward, and that's why I had him removed."

After the prosecutor completed her sentencing argument, defense counsel asked for and received permission to make some additional comments. In these comments, she again noted that "we have also provided evidence that Mr. Hunter was the victim of trauma and suffers from

5

posttraumatic stress." Defense counsel also asked the court to stay any fines, fees, and costs based on Hunter's inability to pay, and stated that Hunter had been disabled for a substantial period of time and did not have the ability to pay.

The trial court denied the *Romero* motion to strike the strike prior, declined to strike the One Strike allegations, and imposed a sentence of 50 years to life for one of the forcible rape counts, plus full, consecutive determinate terms totaling 80 years for the rest of the counts under section 667.6, subdivision (c). In ruling on the *Romero* motion, the court observed that "basically you have a teenager who was overpowered, kidnapped, taped, transported to an unknown location, had her life threatened, was raped multiple times in multiple ways." The court also noted that this was the defendant's "third felony case" and he "had been to prison twice before." The court found that Hunter did not fall outside the Three Strikes sentencing scheme because "the People of California were concerned with exactly this type of violent conduct from people who had multiple convictions."

The court ordered Hunter to pay "the minimum restitution fine in the amount of $300" and an "additional minimum restitution fine of $300 to be stayed and remain so unless his supervision is revoked." The court reserved jurisdiction over direct victim restitution. However, the court struck the court security fee, criminal conviction assessment fee, and sex offender registration fee.

## DISCUSSION

## I

Hunter first argues that he received ineffective assistance of counsel due to his attorney's failure to object to his removal from the courtroom during sentencing. To establish ineffective assistance of counsel, a defendant

6

must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Scott* (1997) 15 Cal.4th 1188, 1211 (*Scott*); *Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*).)

Hunter cannot prevail on either of these prongs. First, as to deficient performance, the appellate record is silent as to why defense counsel did not object to Hunter's removal from the courtroom. It is "particularly difficult to establish ineffective assistance of counsel on direct appeal, where we are limited to evaluating the appellate record. If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*Scott, supra*, 15 Cal.4th at p. 1212; see also *People v. Bradford* (1997) 14 Cal.4th 1005, 1052 [reviewing court will find ineffective assistance of counsel "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission" (internal quotation marks omitted)]; *People v. Mayfield* (1993) 5 Cal.4th 142, 188 ["tactical choices presented . . . on a silent record . . . are better evaluated by way of a petition for writ of habeas corpus, and on direct appeal we reject them"].)

On this record, we cannot conclude that there is no rational explanation for defense counsel's failure to object to Hunter's removal from the courtroom. Even assuming there was an arguable legal basis for objection, defense counsel may well have concluded that Hunter's disruptions were doing him more harm than good, that he would be unable to control himself if allowed to remain in the courtroom (especially given his own statement that "I can't

help it"), and that the defense stood a better chance of having the court exercise leniency in his absence. This would have been a rational tactical reason for not objecting to Hunter's removal. Thus, Hunter cannot establish deficient performance based on the appellate record.

Second, Hunter cannot establish prejudice under the *Strickland* standard either. His only argument on prejudice is that he might have provided some assistance to his counsel in arguing for leniency based on his juvenile trauma, mental health issues, and traumatic brain injury. But defense counsel had already argued these issues to the court in her sentencing argument *before* Hunter was removed from the courtroom, when he was still present to assist her. She had also presented evidence on these matters in the exhibits to her sentencing brief and *Romero* motion, which the trial court read before the sentencing hearing. There is no reason to believe that Hunter would have provided additional useful information to his counsel on these subjects beyond what the defense had already submitted and argued before he was removed from the courtroom. "Prejudice must be a demonstrable reality established based on facts in the record, not simply speculation as to the effect of the errors or omissions of counsel." (*People v. Tilley* (2023) 92 Cal.App.5th 772, 778.) "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test . . . ." (*Strickland, supra*, 466 U.S. at p. 693.)

We therefore conclude that Hunter has not established ineffective assistance of counsel based on his attorney's failure to object to his removal from the courtroom for disruptive conduct at sentencing.

8

II

Hunter next argues that the $300 restitution fine should be stayed because the trial court failed to recognize its discretion not to impose this fine as a matter of due process based on Hunter's inability to pay under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).[2] He bases this argument solely on the trial court's statement that it was ordering "the minimum restitution fine in the amount of $300," but striking the court security fee, criminal conviction assessment fee, and sex offender registration fee. According to Hunter, the trial court's reference to the $300 "minimum restitution fine" demonstrates that it believed the fee was mandatory and it had to impose it regardless of Hunter's inability to pay.

We disagree. By its terms, the statute requires imposition of a restitution fine that "shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000)." (§ 1202.4, subd. (b)(1).) Thus, the trial court accurately described $300 as the "minimum" required by the statute. But it does not necessarily follow that the trial court believed due process permitted the imposition of this fee even if Hunter lacked the ability to pay it. Because defense counsel never specifically objected on due process grounds, the trial court had no opportunity to rule one way or the other on this constitutional issue.

In any event, Hunter cannot establish prejudicial error because the record affirmatively establishes that he had the ability to pay a $300 fine. According to the probation report, Hunter was receiving $400 per month in social security benefits and $2,000 per month in disability from the Navy. Hunter has never contested the accuracy of this information. Accordingly,

---

[2] Other California courts have disagreed with the holding of *Dueñas*, and the issue is currently pending before our Supreme Court. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

9

even assuming any due process violation under *Dueñas*, it would be harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24) because Hunter had the ability to pay a $300 fine. (*People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140 [*Dueñas* error harmless under *Chapman* because defendant had ability to pay $370 fine]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [*Dueñas* error harmless under *Chapman* because defendant had ability to pay $300 restitution fine and $70 assessments].)

## DISPOSITION

The judgment is affirmed.


BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.